NATHANIEL PASCHALL, appellant, v. ELIZA S. HAILMAN, ad-ministratrix of William Morrison, deceased, appellee.

*Appeal from Randolph.*

The distribution of the estate of a testator or intestate is to be controlled by the law which was in force at the time of the death of the testator or intestate.

In the distribution of the assets of deceased persons, judgment creditors and simple contract creditors are placed upon an equal footing.

THIS was the case of an appeal from an order of the Pro-bate Justice of Randolph county, allowing an administrator a preference claimed by him over the creditors of the es-tate. It was taken by agreement from the Probate to the Circuit Court of Randolph county, where, at the November term 1847, a judgment, *pro forma,* was made affirming that of the former Court, from which, by further agreement, the case was brought by appeal into this Court.

The facts of this case appear in the Opinion of the Court.

*J. Semple,* for the appellant, made the following points:

I. The appellant contends that the whole of the assets in the hands of the administrator should be paid *pro rata* to all the creditors of Edgar, who had filed their claims and had them allowed within two years from the date of administra-tion in the Court of Probate, and that the administrator could not retain his debt, or have any preference.

The Statute of Wills, (section 105,) provides that "when any real estate shall at any time be ordered to be sold, the moneys arising from such sales shall be received by the ex-ecutor or administrator applying for such order, and shall be considered as assets in his or her hands for the payment of debts, and shall be applied in the same manner as assets ari-sing from the sale of personal property."

The same statute, (section 110,) provides that "all demands against the estate of any testator or intestate, shall be divi-ded into classes in mannner following, to wit: 1st. All fu-neral and other expenses attending the last sickness, shall

compose the first class; 2d.   All expenses of proving the
will and taking out letters testamentary, or of administration
and settlement of the estate, and the physician's bill in the
last illness of the deceased, shall compose the second class;
3d.   Where any executor, administrator, or guardian has re-
ceived money as such, his executor or administrator shall
pay out of his estate the amount thus received and not ac-
counted for, which shall compose the third class; 4th.   All
other debts and demands of whatsoever kind, without regard
to quality or dignity, which shall be exhibited within two
years from the granting of letters as aforesaid, shall com-
pose the fourth and last class.   And all demands not exhib-
ited within two years as aforesaid, shall be forever barred,
unless such creditor shall find other estate of the deceased
not inventoried or accounted for by the executor or adminis-
trator, in which case his claim shall be paid *pro rata* out of
such subsequently discovered estate."

The same statute, (section 114,) provides that "all claims
and demands against estates, when allowed by the Court of
Probate, as aforesaid, shall be classed, and paid by the exe-
cutor or administrator, in the manner provided in this
Act, commencing with the first class; and when the estate is
insufficient to pay the whole of the demands, such demands
in any one class, shall be paid *pro rata*, whether the same
shall be due by judgment, writing obligatory, or otherwise,
except in such cases as shall be herein excepted.

The same statute, (section 115,) provides that "when any
executor or administrator shall have any demand against his
testator or intestate estate, he shall be required to file
his demand with the Court of Probate, as other persons, and
the Court shall appoint some discreet person to appear and
manage the defence for the estate."

Section 119 makes further provision for a *pro rata* divi-
sion of assets among creditors at each and every settlement.
Nothing can be clearer than these statutory provisions and
directions, that all debts, including *judgments by name*, shall
be paid out of the assets of an insolvent estate *pro rata* in
each of the classes shown.

Paschall *v.* Hailman.

Unless, then, it can be shown that Morrison's judgments had some lien or right to preference in payment, established by law, making them an exception to these general provisions, then this statute settles this question beyond all doubt.

II.   The appellant contends that Morrison never had any lien whatever on the personal estate of Edgar, or on the assets in the hands of his administrator, nor could he retain as administrator, that right being taken away by the statute, (sec. 115,) which requires him to "file his demand *as other persons.*"   The same principle of an executor proving his debt as other persons, is decided by the Supreme Court of the United States in *Nichols* v. *Hodges,* 1 Peters, 565, and *Paige* v. *Patton,* 5 do. 311.   In this last case the Court, after deciding that the executor may retain his own debt of, equal dignity but not inferior dignity, under the laws of Virginia, say, that "in some of the States this rule would not apply, as there is no difference made in the payment of debts between a bond and simple contract."

This is one of the States in which all debts being placed on the same footing by statute, the decision above applies, and thus excludes the idea of an executor retaining his own debt even of the same dignity.

III.   The appellant contends that Morrison had no lien on the real estate of Edgar, because his judgment being obtained in 1826 came under the provisions of the Act of 17th January, 1825, which limited judgment liens to seven years, which lien ceased at the death of Edgar, or if it extended beyond his death, it had expired before the sale of the lands aforesaid in 1834 and 1836.   During all the time of the existence of the lien, he had the right, undisturbed by injunctions or otherwise, to proceed with his lien against the lands of Edgar; but he failed to do this, stood by and saw the lands sold, or rather sold them himself as administrator, and turned into personal assets without even attempting to assert his lien, and now, more than twenty one years after his judgment was obtained, claims his lien on the assets in the hands of the administrator.

In the case of *Bustard* v. *Morrison,* administrator of Ed-

gar, 1 Scam. 235, this Court say: "If by the lapse of time, and their (the plaintiffs') own laches they have lost their lien, a Court of Chancery cannot aid them, by extending the lien beyond the period limited by law."

In Indiana, the Courts have gone much further than ours in cutting off these judgment liens when an estate is insolvent, and subjecting the whole to the more equitable rule of a *pro rata* division.

In *Berry* v. *Marshall,* 1 Blackf. 340, a judgment obtained in the lifetime of deceased, and a pending lien on his land at the time of his death, was held to be divested by a statute passed subsequent to the judgment, but before the death of deceased, and the Court ordered the insolvent estate to be divided *pro rata* according to the last mentioned statute. This decision was made under the Act of 1821. The Act of 1828 changed this rule and preserved the lien on an insolvent debtor's estate obtained in the lifetime of the deceased.

But even under the statute thus preserving the lien, it was held in *Joyce* v. *Hufford,* 7 Blackf. 382, that a judgment against the heirs must give way to an equal distribution among the creditors.

In these cases, the Act of 1828 preserving the lien was passed after the Act of 1821 requiring a *pro rata* division. In our State, the Act of 1829 requiring an equal distribution was passed after the Act of 1825 giving the lien, and repeals all Acts coming within its purview or conflicting with its provisions. It is therefore respectfully suggested that the case of *Reynolds* v. *Henderson,* 2 Gilm. 110, is not good law.

The case of *Menard* v. *Marks,* 1 Scam. 25, rests on different grounds. The distinction seems to be, that a mortgage is a contract between the parties, which the law cannot divest, but a judgment lien, being given by statute, creates no vested right which may not be taken away by the same power in a subsequent statute. See *Bank of Hamilton* v. *Dudley,* 2 Peters, 522, where this point is decided.

Here we might rest the case either on the ground that

the lien was lost at Edgar's death, or that if it continued after his death, it expired by the parties' own laches before the sale of the lands; nor could it by any known rule of law be followed to the proceeds of the sales of the lands when reduced, under the statute, to assets in the hands of the administrator.

IV. But to take this in every possible or supposable contingency, even should the lien be construed to extend beyond the seven years, the appellant contends, that by filing his judgments in the Court of Probate to come in for a *pro rata* distribution of the assets, Morrison waived any lien he might have had.

V. The appellant further contends, that in this case the judgment, in any event, would only be a lien on Edgar's lands in the county of Randolph, and could not extend to the lands situated in other counties. See case of *Bustard* v. *Morrison*, administrator of Edgar, 1 Scam. 235.

There might have been some reason on the part of Morrison for filing his claim to come in *pro rata*, for at the time of these sales, the lands in the counties of Madison and St. Clair were considered the most valuable and the most saleable. Morrison might have supposed that he would get more out of his *pro rata* on the whole of Edgar's lands in the State, than he could have obtained by enforcing his lien on the lands in the county of Randolph. Though it does not appear on the record, and it may be improper to allude to it, yet, in point of fact, the lands in other counties brought a great deal more than the lands in Randolph. The record, however, shows that there were judgments against Edgar prior to Morrison's, which would have taken a considerable part of the lands on which Morrison's judgment was a lien.

VI. If any lien existed, the only remedy of the party was to pursue his lien by a proceeding *in rem* against the lands subject to the lien, and he can in no state of case pursue it as against assets. If the lien existed in 1834 and 1836, the lands were sold of course subject to the lien. See *Bustard* v. *Morrison*, administrator of Edgar, 1 Scam. 235. Morrison may yet pursue his lien, if he has one, by selling the

lands subject to it. The judgments being a matter of record, the purchasers bought the lands with knowledge of the lien, and made their calculations accordingly in bidding for the land. The administrator may sell lands subject to a mortgage, and the purchaser buys it subject to the incumbrance; the proceeds would be assets to pay other debts than the mortgage debt.

*R. S. Blackwell,* also for the appellant.

1. Morrison's judgment is no lien upon the real estate of which Edgar died seised: Because the lien expired by limitation of law in May, 1833. Laws of 1825, 151, § 1; *Roe* v. *Swart,* 5 Cowen, 294; *Little* v. *Harvey,* 9 Wend. 157; *Tufts* v. *Tufts,* 18 do. 621. If, therefore, the lien has expired by lapse of time, Morrison's administratrix has no right to retain assets sufficient to satisfy that judgment, in exclusion of other debts. *Steel* v. *Rorke,* 1 Bos. & Pul. 307, 310; *Hickey* v. *Hayter,* 6 T. R. 384. Even a Court of Chancery will not aid him. *Bustard* v. *Morrison,* 1 Scam. 235.

2. Admitting, however, that Morrison's judgment is a lien, his administratrix must proceed to enforce it, by a proceeding against the land. 1. The lien having once attached, cannot be defeated by any species of alienation whatsoever. *Morris* v. *Mowatt,* 2 Paige, 590; *Rankin* v. *Scott,* 12 Wheat. 177; S. C. 6 Peters' Cond. R. 605. 2. Nor is it affected by the death of Edgar. *Menard* v. *Marks,* 1 Scam. 25; *Reynolds* v. *Henderson,* 2 Gilm. 110; Laws of 1829, 85, § 2. Upon his death, the lands descended to his heirs subject to all the liens, charges and incumbrances, which existed against those lands at the time of his decease. *Wilkinson* v. *Leland,* 2 Peters, 657; *Drinkwater* v. *Drinkwater,* 4 Mass. 358–9. 3. The administrator's sale passed no greater rights than the heirs had in the lands at the time of the sale. 4. The administratrix had no right to the proceeds of the sale of the real estate. *Paysinger* v. *Shampard,* 1 Bailey, 237, cited in 2 U. S. Dig. 316, Note 23; *Conard* v. *Atlantic Ins. Co.* 1 Peters, 442–4.

3. The doctrine of retainers does not exist under our

laws, as unqualifiedly as it was recognized by the Common Law: 1. The reason of the rule has ceased.    3 Bl. Com. 18–19;  Laws of 1829, 230, § 115.    2. Personal assets only can be retained by the administratrix.    The proceeds of land are equitable assets, which must be distributed *pro rota* among the creditors, without regard to the dignity of the debts.   *Rogers* v. *Rogers*, 3 Wend. 516.

4.    Again, Morrison's lien did not extend to lands situate beyond the limits of Randolph county.    Therefore, as the sale of all the lands of Edgar created a confusion of assets, Morrison's administratrix had no right to retain a sum suf-ficient to satisfy the judgment of her intestate.   *Bustard* v. *Morrison*, 1 Scam. 235.

5.    Nor did Morrison's judgment create any lien upon the personal estate of Edgar, or give him any right to retain the personal assets in exclusion of other creditors.   Laws of 1825, 152, § 6.   *Blount* v. *Traylor*, 4 Ala. 667.

6.    By filing a transcript of those judgments in the Probate Court of Randolph county, Morrison waived the specific lien he had acquired upon the lands of Edgar, and elected to take a *pro rata* distribution out of the general assets.

From this view of the subject, the conclusion follows, that the judgments of Morrison have no preference over other creditors in the distribution of the assets of Edgar's estate, and that if his administratrix has any right to retain, under our laws, she can only retain a *pro rata* part.

*D. J. Baker*, for the appellee, made the following points:

1.   The Common Law gives to a creditor by judgment a priority of payment over simple contract or specialty credit-ors, in respect to the personal assets of a deceased debtor. See Toller's Law of Ex'rs. 258, *et seq.*   This right is distinct from the judgment creditor's right of lien, which is created, and its character and extent determined by statute.   See sec-tion 2 of Act relative to judgments and executions, approved January 17th, 1824.   See also Act of 1825.   By the Act of 1823, the proceeds of the sales of real estate, when all the land of the deceased debtor were sold, were made equitable

assets.   See Laws of 1823, 169.   By the Acts of 1825 and 1829 they are legal assets, or rather are made assets general- ly, and to be applied in payment of creditors, as are the pro- ceeds of the personalty.

2.   The Act to amend the Act regulating administrations, and the descent of estates, and for other purposes, approved February 12th, 1823, does not profess to take away this right of priority in payment from the judgment creditor.   The legislature is not competent to take it away from a creditor, who had obtained his judgment before the passage of the Act; but judgments are not embraced by the terms of the Act.   The words are: "Not giving any preference to any debts on account of the instrument of writing on which the same may be founded."   The rights of the judgment credit- ors, Morrison & Tiffin, having obtained their judgments while this Act was in force, are to be determined by it.   In the case of Betts & Smith, administrators of *Jones* v. *Bond,* this Court decided, that this Act does not apply to the estates of those who died before its passage.   Bre. 223.   In the case of *Woodworth* v. *Greenup & Conway,* administrators of Payne, this Court held that judgments were not embraced by that Act, and were entitled to priority in payment over sim- ple contracts or specialty debts, when the estate of the de- ceased was insolvent, and notwithstanding the provisions of the Act of February 12th, 1823.   Moreover, the last section of the Act concerning wills and testaments, &c., passed in 1829, contains an express saving of the rights acquired under former laws.   It is said by the counsel on the other side, that the right of priority in payment, is in consequence of the lien of the judgment created by the law.   This cannot be so, for debts by specialty at the Common Law had pri- ority over debts by simple contract; and debts due by spe- cialty, or instruments under seal, were never a lien on property.   The lien, too, of a judgment, is on the lands of the debtor, and the priority of payment relates only to the personalty.   Most of the authorities referred to by the coun- sel for the appellant, it is submitted, have, at most, only a remote application to this case.   In *Woodworth* v. *Greenup*

*&* *Conway,* (administrators, &c.) this Court affirm the right
of the judgment creditor to a priority in payment out of the
personalty, and decide it to be a vested right.   If so, it is
not taken away, nor could it be, by the Act of 1829, concern-
ing wills, &c.   The last section of that Act is ample to se-
cure all rights vested under former laws.   The right of
Wm. Morrison, as the administrator of John Edgar deceased,
to retain in this case, is incidental to, and grows out of his
right of priority of payment.

*T. Ford,* for the plaintiff in error, in conclusion.

The Court is likely, in this case, to be misled by mixing up
together the doctrine of judgment liens upon land, a credit-
or's right to priority of payment, and the common law right
of an administrator to retain for a debt due to himself.
These matters must be considered separately, or otherwise
the law will be confounded.

I.  Can an administrator who is also a judgment creditor,
after a sale of lands to pay debts, follow the land into the
money and assert his lien on the money?   The administrator
filed his judgment in the Probate Court, procured it to be
allowed, and it being thus made to appear that personal es-
tate was insufficient, obtained from the Circuit Court an order
to sell land.   By so doing he abandoned his lien on the land.
If he sold the whole interest in the land, his lien is gone.   If
he sold only the interest of the heir, then he has no claim
to the money, because in that case the land was sold only for
the value of the land over and above the amount of the judg-
ment.   Morrison's lien would still be in full force, and might
be asserted by execution, notwithstanding the sale.   Is, then,
the judgment creditor not only to have a lien on the land to
be prosecuted by execution, and also the money for which
the land sold over and above the amount of the judgment.

The proper remedy for a judgment creditor to enforce his
lien is by execution.   2 Gilm. 110.   In this case, it is decided
that the judgment holds against the administrator.   It has
been held, that if a grandfather devise land to his son, and
the son dies, and the land is sold by order of Court, the

money does not go to the grand children, but is assets. The thing devised, by a sale, is divested of its character of land, and will be disposed of as money. 14 Pick. 345. This case shows that the incidents which belong to land do not follow the land into the money for which it has been sold. It has been held, also, that if a judgment creditor loses his lien at Law, a Court of Equity cannot assist him. 2 Gilm. 110; 1 Scam. 235. Also that an administrator cannot be specially ordered to pay off a judgment lien. Such an order would require him to act in the character of a commissioner, and not in that of an administrator. 3 Scam. 207. If a debtor himself should sell his own land, the judgment creditor has no right to the purchase money; his lien is on the land itself, which is to be enforced in the manner given by law and not otherwise; he has only a power over the land, and no right in the land, and therefore has no right to resort to a fund raised by a sale of the land. 1 Peters, 442–4. A judgment lien binds the property in whosoever hands it may be found, (2 Paige, 590,) and is continued as long as the law which governs it is in force. 6 Peters' Cond. R. 504. The heir takes land subject to incumbrances, and his interest may be made assets in the hands of the administrator. 2 Peters, 657; 4 Mass. 358. The statute in force at the time the lands were ordered to be sold and when they were sold, expressly declares that the proceeds of the sale shall be assets in the hands of the administrator, and be applied as personal estate. Acts of 1829, Wills and Testaments, § 105.

II. Nor has the administrator a right to retain. The right to retain was given by the Common Law, because an administrator cannot sue himself. 5 Peters, 304–311. The same case establishes the doctrine, that there is no right of retainer in those States where the law does not give a priority. The Act of 1829 takes away the priority of a judgment. Wills and Testaments, §§ 110, 114. The same law allows an administrator to sue for a debt due himself. § 115. By this section, the administrator is compelled to file his claim, whatever it may be, with the Judge of Probate, and get it allowed as other claims; the Judge of Probate is to appoint

some person to defend the estate. The administrator may appeal, and the Judge of Probate is to appoint some person to defend in the Circuit Court. In the very next section following, (§ 116,) it is enacted that all claims thus allowed shall be classed, entered of record, and paid *pro rata*. In none of the provisions of the Act, is the debt due to an administrator treated of, or placed on a different footing from debts due other persons. At all events, the doctrine of retainer does not apply to money arising from a sale of land by an administrator. 3 Wend. 516.

III. But it is said that although the administrator has no lien, nor a right to retain, yet is he entitled to a priority of payment. This claim is made out as follows: The Common Law allowed a priority of payment in favor of judgments. This Common Law right was in force when the judgment was recovered in 1826, and attached itself to the judgment. It became a vested right, and was not affected by the Act of 1829, taking away the priority of judgments. To support this view, the defendant relies on the authority of *Betts* v. *Bond*, Bre. 223; and *Woodworth* v. *Payne's* administrators, Ibid. 294. In the first case it is decided, that the law in force when Payne died is to govern in the settlement of his estate. This is an authority for the plaintiff, because Edgar lived until 1830, long after the Act of 1829 had taken away the priority of judgments, and in effect decides that the law of 1829 is to govern in the settlement of his estate. The other case decides nothing that I can see. The Court there so mix up the law about judgment liens, and liens obtained by the levy of an execution on personal estate, though not in question in the case, with the right of priority, that it is impossible to find out what is decided. The Court, however, holds even in this case, that the law in force at the time of the decedent's death is to govern in selling his estate, and they hold the plea to be bad because it did not show whether he died before or after the Act of 1823. The position that the right of priority attached itself to the judgment as soon as rendered, and in the life time of Edgar, and became a vested right, is untenable. Even a judgment lien is not a

vested right. It is a mere power over the land, and not a right in it. 1 Peters, 442–4. It continues no longer than the law is in force which governs it, (6 Peters' Cond. R. 505,) and may be destroyed altogether by a repeal of the law. 1 Blackf. 340; 7 do. 382; 1 Ohio Cond. R. 258–9. The right of priority can be no more sacred than a judgment lien. The Act of 1829 professed to be, and is a revision and full system of law for administrators and executors. As such, it must necessarily repeal the Common Law in all cases where the two conflict. But it is said that the repealing clause reserves all rights acquired under former laws. In this case, I insist that Morrison could not have a right of priority of payment out of Edgar's estate until Edgar died. The right, if any there was, according to Breese, 223, 294, attached to the administration and not to the judgment. The judgment is in force truly, but during the debtor's life there can be no priority. A lien attaches to the judgment immediately, and may be enforced in the lifetime of the debtor; but a right to be paid first out of the estate of a deceased person, from the very nature of the thing, can have no existence in the lifetime of the debtor. If it does so exist there is no mode of enforcing it. It is, therefore, not a right at all, and cannot be reserved by the repealing clause of the Act of 1829.

The Opinion of the Court was deliverd by

PURPLE, J. At the May term 1826, of the Randolph Circuit Court, William Morrison, obtained a judgment against John Edgar, for $791·05¼, upon which execution was issued within one year thereafter. Edgar died on the 1st of December, 1830, and Morrison was appointed his administrator. During the interval between the years 1831 and 1835, both inclusive, claims to a large amount were filed and allowed against Edgar's estate; among which was one in favor of Martha Eliza Edgar, now intermarried with appellant, for $10,500·00 on a bond filed and allowed the 25th April, 1832; and also the judgment in favor of Morrison, also filed and allowed December 8th, 1833; which, at the time, amounted to

$1053·56½.  The personal assets of the estate of Edgar amounted to $764·25.  Of this sum, $306·36 was applied by Morrison in payment of debts, which by law were entitled to priority; and the residue, $467·89, in payment of his judgment against Edgar.  Edgar, at the time of his death, owned several tracts of land, situated partly in Randolph, and partly in other counties of the State.  The personal estate being insufficient to pay the debts of the intestate, Morrison applied to the Circuit Court for leave to sell the real estate before mentioned.  An order was made for the sale, which took place on the 22d August, 1834, and February 2d, 1836 Morrison died, and Eliza S. Hailman, appellee, was appointed his administratrix *cum testamento annexo.*

Paschall applied to the Probate Justice of Randolph county for an order, that the money arising from the personal assets of the estate of Edgar, and also the proceeds of the sales of the real estate, deducting the said $306·36, paid upon claims which had priority in law, should be distributed *pro rata* among the creditors of Edgar, including the judgment in favor of Morrison before referred to.  The Court decided that Morrison, in his life-time, and his administratrix since his death had a right, as against the appellant and other creditors by simple contract, to retain the whole amount due upon said Morrison's judgment out of the said personal assets and the proceeds of said sales.

From this decision, Paschall appealed to the Circuit Court of Randolph county, where, by consent of parties at the November term 1847, a judgment *pro forma* was rendered, affirming the judgment of the Probate Justice, and the appellant prosecuted an appeal to this Court.  Whether the judgment of the Circuit Court affirming the decision of the Probate Justice was erroneous, is the question to be determined here.

It is insisted by the counsel for the appellee: 1st.  That Morrison and his administratrix, by virtue of their appointments as administrator and administratrix, had a Common Law right to retain so much out of assets of the estate of Edgar, as would be sufficient to pay Morrison's judgment

against him, as against other creditors whose claims were of equal degree, and that this provision of the Common Law was in force at the time Morrison recovered his judgment; and that he thereby acquired a vested right to have the judgment enforced according to the Common Law rule against the estate of Edgar, who died on the 1st December, 1830.

It cannot be denied that the Common Law rule in relation to the right of an administrator to retain is as the counsel contend.  Toller on Ex'rs, 295; 3 Burrow, 1380, cites Cro. Eliz. 232.  But whether the appellee is in a condition to avail herself of its benefits, is a question which must be settled by reference to the statutes of this State.

On the 12th February, 1823, the legislature of the State passed a law providing for the distribution of estates of deceased persons, dying insolvent by paying: 1st. Funeral expenses, Probate fees, or fees incurred on administration; 2nd. All other demands in equal proportions, without regard to their nature, giving no preference to any debts, on account of the instrument of writing on which they might be founded.  Laws 1823, p. 127.  Under this statute it has been held, in the case of *Jones' administrators* v. *Bond,* Bre. 223, that the same did not apply to cases where the intestate had died before the passage of the law.  And also in the case of *Woodworth* v. *Paine's administrator,* Bre. 294, that on a *scire facias* to revive a judgment rendered in 1822, this law did not apply to judgments rendered before its passage; but upon the express ground that judgments were not named in the Act, and that being of superior dignity to other debts, were not included; and that they retained their priority as at Common Law.  From an examination of this last case, it will be seen that the judgment creditor sought only to enforce his lien against the land of the intestate.

A short time previous to the passage of the law before referred to, on the 28th of January, A. D. 1823, an Act was passed authorizing executors and administrators, in case of deficiency in personal assets to pay the debts of the testator or intestate, to apply to the Circuit Court and obtain an order for the sale of real estate for the purposes aforesaid; the 4th section of which, among other things, provides that the

moneys arising from such sales, shall be assets in the hands of the executor or administrator, for the payment of debts due from such testator or intestate. Laws 1823, p. 90, 93. The Act of the 12th February, 1823, remained in force until it was supplied and repealed by the Act of July 1st, 1829, of "Wills and Testaments." Laws 1829, p. 190–237.

This Act provides for the distribution of the effects of deceased persons who died insolvent as follows. 1st. By the payment of funeral and other expenses attending the last sickness of the deceased; 2d. Expenses of proving the will, taking out letters of administration and settlement of the estate, and physicians' bills during the last illness; 3d. For the payment of money received by the deceased as executor, administrator or guardian, and not accounted for; 4th. All other debts and demands of whatsoever kind, without regard to quality or dignity, which shall be exhibited in two years from the granting of letters of administration. See section 110. The 114th section provides, that debts of such deceased persons shall be paid in the manner provided in the Act, and when the estate is insufficient to pay the demands of any one class, the same shall be paid *pro rata*, whether due by judgment, writing obligatory, or otherwise, except as in said Act excepted. Section 115 provides, that executors or administrators having demands against the testator or intestate, shall file the same with the Court of Probate as other persons, and that the Court shall appoint some person to manage the defence. Section 119 provides, that upon each settlement, the Court of Probate shall ascertain the amount of debts against the estate, and of the money which has come to the administrator belonging to the estate of the deceased, and if the same shall not be sufficient to pay all the debts due from the estate, he shall make an order, that the same be paid out *pro rata* among the creditors, according to their several rights as established by this Act. Section 140 repeals former laws upon the same subject, and provides, "that no rights acquired under former Acts which are repealed, shall be invalidated or affected by the provisions of this Act."

It is believed that the foregoing provisions of the laws of this State, are all that have any peculiar bearing upon the present question. Since the date of the passage of the law, they have, without any material change, remained in force.

This right of retainer is said by Blackstone, in his Commentaries, Vol. 2, p. 18–19, to be a "remedy by mere act and operation of law, and to be grounded upon this reason: That an executor or administrator cannot, without apparent absurdity, commence suit against himself as representative of the deceased, to recover that which is due to him in his own private capacity; but, having the whole personal estate in his hands, so much as is sufficient to answer his whole demand, is by operation of law, applied to that particular purpose, to the exclusion of other creditors in equal degree, in case of a deficiency of assets to pay the whole of that class of claims against the estate of the testator or intestate.

Without stopping to inquire into the soundness of the reasons given, why the claim of an administrator or executor, because he cannot sue himself, should be preferred in the whole, to the debt of another in equal degree, it is sufficient that we find the law so written; and if the appellee here has shown that she has brought herself within the provisions of the Common Law, her right is indisputable.

This depends upon the solution of one simple proposition: Whether the distribution of the estate of a testator or intestate, is to be controlled by the law which was in force at the time of the death of the testator or intestate; or that which existed at the time when the debt, or right, accrued to the creditor.

We apprehend that there can be but one rational conclusion formed upon the subject. When Edgar died, the Act of 1829 was in force, and that of 1823 repealed, and all the provisions of the Common Law of England, in relation to the right of an executor or administrator to retain in preference to other creditors in equal degree, supplied, by prescribing the manner in which he may prove his demand against the estate; that all moneys in his hands, whether arising from personal property, or the sale of real estate, shall be assets in

his hands for the payment of debts due from the testator or intestate; and by declaring, with certain exceptions before mentioned, that the assets shall be distributed, *pro rata,* among all the creditors who shall file and prove their claims within the time limited by law, without regard to the quality or dignity of the same.

The idea, that because Morrison obtained a judgment against Edgar in 1826, when, it is said, that the Common Law applicable to the distribution of the estates of deceased persons was in force in this State, he thereby acquired a vested right, that Edgar's assets, whenever he might die, should be applied in payment of his debts, according to the law as it existed at the time his judgment was rendered, cannot for one moment be indulged, and the decisions of the Supreme Court before referred to, fall far short of establishing any such principle. In order to sustain such a position, it would be necessary that Morrison should show that by virtue of his judgment, he had acquired a vested right to administer on Edgar's estate.

The Court has no hesitation in coming to the conclusion, that the appellee in this case has no right under the law, to retain her demand against the estate of Edgar, to the exclusion of other creditors in equal degree according to the rules of distribution of intestates' and testators' estates, as prescribed by the Act of 1829.

The next point made by the appellee is, that being a judgment creditor, she is entitled to priority in payment out of the assets of Edgar over creditors by bond or simple contract; and for the same reasons, and upon the same principles substantially, that she has the right to retain; that is, that such was the law at the time of the rendition of Morrison's judgment. The reasons which have been before given against her right to retain, and the law before referred to regulating the distribution of estates in force at the time of Edgar's death, are as conclusive upon this as upon the other point. By the Act of 1829, the idea that any such right of priority existed, is totally excluded. So far as the distribu-

tion of assets is concerned, judgment creditors and simple contract creditors are placed upon an equal footing.

It has not been seriously urged by the counsel for the appellee, that she was entitled to claim priority in payment, by virtue of her judgment lien upon the land which had been sold and converted into assets.

Such a position, we think, (if taken,) would be untenable. If Morrison had a lien upon any portion of the land, he might, had he chosen to do so, have enforced the same; but he could not sell the land, nor the interest of the heirs of Edgar in the same, and thereby transfer his lien from the land to the money arising from the sale, which the law has declared shall become assets in his hands for the payment of debts, *pro rata*, of the testator or intestate. If he sold the land itself without reservation or qualification, he will be presumed to have waived his lien. If he only sold the interest of the heirs of Edgar, he may still retain his lien; and in either event, he sustains no injury of which he has any just right to complain.

The order and decision of the Probate Justice of the Peace, and also of the Circuit Court affirming the same, was erroneous. The order should have been made as applied for by the appellant, that the appellee, after discharging such claims, as by the law of 1829 were entitled to precedence, should pay *pro rata* to the creditors of the estate of Edgar, whose claims had been filed and allowed within the time prescribed by law, all such sums of money as may have come to her hands as administratrix, with the will annexed, of William Morrison, deceased, who was administrator of John Edgar, deceased, whether the same were due by judgment, writing obligatory, or simple contract.

The judgment of the Circuit Court is reversed at the costs of the appellee, both in this Court and in the Court below, to be paid by the said appellee in the due course of administration.

*Judgment reversed.*